# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

───────────────

GREG HALE, on behalf of himself and all others similarly situated, *et al.*,

Plaintiffs-Appellees,

v.

ARCARE, INC., originally named as ARCARE

Defendants-Appellants.

───────────────

On Appeal from the United States District Court
for the Eastern District of Arkansas

───────────────

## BRIEF FOR UNITED STATES OF AMERICA
## AS *AMICUS CURIAE* IN SUPPORT OF APPELLEES

───────────────

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

JONATHAN D. ROSS
  *United States Attorney*

MARK B. STERN
DANA L. KAERSVANG
KEVIN J. KENNEDY
  *Attorneys, Appellate Staff
  Civil Division, Room 7234
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC 20530
  (202) 514-4214*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

INTEREST OF THE UNITED STATES ...........................................................1

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE................................................................................2

      A.    Statutory Background.............................................................................2

      B.    Factual and Procedural Background ..................................................4

SUMMARY OF ARGUMENT............................................................................8

STANDARD OF REVIEW ................................................................................9

ARGUMENT .....................................................................................................9

I.    The United States Has Not Assumed Liability for the Claims Asserted in This Case.........................................................................................................9

      A.    Section 233 covers only personal injury claims arising from misfeasance in the provision of health care...................................9

      B.    The district court correctly found that plaintiffs' claims fall outside § 233's coverage. .........................................................................13

      C.    ARcare's arguments to the contrary are unavailing. ..................17

II.    Section 233 Does Not Provide Authority to Compel Substitution of the United States...........................................................................................23

CONCLUSION .............................................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Bath County v. Amy*,
   80 U.S. (13 Wall) 244 (1871) ...................................................................24

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000) ............................................................... 12, 14

*Ford v. Sandhills Med. Found., Inc.*,
   97 F.4th 252 (4th Cir. 2024).................2, 8, 10, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22

*Friedenberg v. Lane County*,
   68 F.4th 1113 (9th Cir. 2023)........................................................... 22, 23

*Harrington v. Purdue Pharma L.P.*,
   144 S. Ct. 2071 (2024)..................................................................... 17, 18

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
   535 U.S. 826 (2002) ......................................................................23

*Hui v. Castaneda*,
   559 U.S. 799 (2010) ...................................................... 10, 19, 24, 26

*Lemley v. Mitchell*,
   304 F. Supp. 1271 (D.D.C. 1969) .................................................25

*Letterman v. Does*,
   859 F.3d 1120 (8th Cir. 2017)........................................................9

*Levin v. United States*,
   568 U.S. 503 (2013) ......................................................................25

*Mendez v. Belton*,
   739 F.2d 15 (1st Cir. 1984)........................................................ 10, 22

*Seiden v. United States*,
   537 F.2d 867 (6th Cir. 1976) .......................................................25

*United States v. Mitchell*,
    445 U.S. 535 (1980) ...........................................................................................24

**Statutes:**

Federal Drivers Act,
    Pub. L. No. 87-258, 75 Stat. 539 (1961) ............................................................25

Federally Supported Health Centers Assistance Act of 1995,
    Pub. L. No. 104-73, 109 Stat. 777, 777 ..............................................................12

Public Health Service Act,
    42 U.S.C. § 233 ...........................................................................................1, 2, 9
    42 U.S.C. § 233(a) ....................................................1, 2, 3, 6, 8, 9, 10, 12, 13, 17
    42 U.S.C. § 233(b) .............................................................................................4
    42 U.S.C. § 233(c) ........................................................................................4, 24
    42 U.S.C. § 233(g) ............................................................................................11
    42 U.S.C. § 233(g)(1)(A) ...................................................................1, 2, 3, 9, 19
    42 U.S.C. § 233(g)(1)(B) ...............................................................................3, 12
    42 U.S.C. § 233(g)(1)(C) ...............................................................................3, 12
    42 U.S.C. § 233(g)(1)(G)(ii) ........................................................................11, 22
    42 U.S.C. § 233(g)(2) .......................................................................................11
    42 U.S.C. § 233(g)(4) .........................................................................................2
    42 U.S.C. § 233(h)(1) .......................................................................................11
    42 U.S.C. § 233(*l*)(2) ........................................................................................6
    42 U.S.C. § 233(m)(2) ......................................................................................11
    42 U.S.C. § 233(n)(1)(A) ..................................................................................11
    42 U.S.C. § 233(n)(1)(D) ..................................................................................11
    42 U.S.C. § 233(n)(2)(C) ..................................................................................11
    42 U.S.C. § 251(b) ............................................................................................10
    42 U.S.C. § 254b(k)(3) ......................................................................................21
    42 U.S.C. § 254b(k)(3)(C) .................................................................................21

Pub. L. 94-464, 90 Stat. 1985 (1976) ....................................................................13

10 U.S.C. § 1089 ...................................................................................................13

28 U.S.C. § 517 .................................................................................................1, 7

28 U.S.C. § 2679(b)(1) ...........................................................................................3

28 U.S.C. § 2679(d)(3) ................................................................. 4, 26

28 U.S.C. § 2680 ............................................................................ 20

**Regulations:**

42 C.F.R. § 6.6(e) .......................................................................... 12

42 C.F.R. § 51c.109 ....................................................................... 22

**Rules:**

Fed. R. Civ. P. 24 ...................................................................... 24-25

Fed. R. Civ. P. 29 ............................................................................ 1

**Legislative Materials:**

116 Cong. Rec. 42,543 (1970) ....................................................... 13

H.R. Rep. No. 102-823, pt. 2 (1992) ............................................. 13

S. Rep. No. 94-1264 (1976) .......................................................... 13

**Other Authority:**

21 Fed. Reg. 9805 (Dec. 12, 1956) ............................................... 10

## INTEREST OF THE UNITED STATES

The United States files this amicus brief pursuant to 28 U.S.C. § 517 and Federal Rule of Appellate Procedure 29(a). The United States has a substantial interest in the proper construction of 42 U.S.C. § 233, which affects the extent to which the United States has assumed liability for claims against certain federally funded health centers.

## STATEMENT OF THE ISSUES

The Federally Supported Health Centers Assistance Act (Health Centers Act) provides that health centers that receive certain federal grant funds and their employees, can, in some circumstances, be deemed federal employees for purposes of medical malpractice liability such that suits against them proceed as Federal Tort Claims Act (FTCA) suits against the United States. 42 U.S.C. § 233(a), (g)(1)(A). The Health Centers Act makes the FTCA the exclusive remedy for suits within its scope, but applies only to personal injury suits "resulting from the performance of medical, surgical, dental, or related functions," among other limitations. *Id.* § 233(a).

Plaintiffs brought suit against ARcare, a federally funded health care center, alleging that their data had been compromised in a cyberattack on ARcare's system. The district court denied ARcare's motion to substitute the United States as defendant because the claims did not fall within the scope of 42 U.S.C. § 233(a), (g)(1)(A).

The questions presented are:

1.  Whether the district court correctly held that plaintiffs' data-breach claims did not result from the "performance of medical, surgical, dental, or related functions" as required for coverage under § 233(a).

2.  Whether the district court erred in stating in dicta that, had it found that ARcare was immune under § 233(a), it had authority to substitute the United States as the defendant.

Apposite authority:  42 U.S.C. § 233; *Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252 (4th Cir. 2024).

## STATEMENT OF THE CASE

### A.    Statutory Background

1.  Under the Public Health Service Act (PHSA), the exclusive remedy for medical malpractice committed by Public Health Service employees acting within the scope of their employment is a tort action against the United States under the FTCA. *See* 42 U.S.C. § 233(a).

The Health Centers Act extended that coverage to "public or non-profit private" health centers that receive certain federal health grant funds, and to the officers, employees, and qualified contractors of such grant recipients, subject to certain conditions.  42 U.S.C. § 233(g)(4); *see id.* § 233(g)(1)(A).  To be eligible, the entity must submit an application to the Secretary of the Department of Health and Human Services (HHS), and if the application is approved, the entity and its officers, employees, and qualified contractors are "deemed" to be employees of the Public

Health Service for the upcoming calendar year "[f]or purposes of" § 233. *Id.* § 233(g)(1)(A).

The Secretary's deeming decision does not establish that a deemed entity or individual will be covered under the FTCA for any particular lawsuit. Deemed entities are "deemed" only "with respect to services provided" to "patients," 42 U.S.C. § 233(g)(1)(B), or to non-patients in defined circumstances, *id.* § 233(g)(1)(C) (covering non-patients when the "provision of the services to such individuals" "benefits patients," "facilitates the provision of services to patients," or is required by a contract).

As particularly relevant here, even if those criteria are satisfied, coverage is restricted to suits "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions." 42 U.S.C. § 233(a), (g)(1)(A).

2. Coverage under the Health Centers Act differs from that available in suits against federal employees under the Westfall Act, 28 U.S.C. § 2679. Under the Westfall Act, the United States may, with some exceptions not relevant here, be substituted for an "employee of the Government" whenever the employee was "acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). No additional inquiry is required.

The two statutes also differ with regard to cases in which the government determines that substitution is not proper. Under the Health Centers Act, when a suit is filed against a deemed entity or its employee in federal court, the government determines whether the United States should intervene to defend the action. *See* 42 U.S.C. § 233(b). If the government determines that the entity was "deemed" with respect to the conduct at issue, the United States substitutes itself as the defendant and the suit proceeds against the United States under the FTCA. *See id.* § 233(c). If the government determines that the conduct is not covered, however, the suit proceeds against the deemed entity or employee. The Health Centers Act has no provision analogous to the Westfall Act's instruction that if the Attorney General "refuse[s] to certify scope of office or employment" for purposes of coverage under the statute, the United States nevertheless "shall be substituted as the party defendant" if the district court "find[s] and certif[ies] that the employee was acting within the scope of his office or employment" at the time of the allegedly tortious conduct. 28 U.S.C. § 2679(d)(3).

## B.     Factual and Procedural Background

1. ARcare receives federal funding under the PHSA to provide primary care services, and was a "deemed" employee of the Public Health Service with respect to

those funded health care services for the years relevant to this suit. App. 146; Add. 4; R.Doc.39, at 4.[1]

In January 2022, a hacker accessed ARcare's system and potentially compromised personal information stored there. App. 19; R.Doc.19, at 7, ¶¶ 27-28. Plaintiffs in this putative class action—Greg Hale, Alicia Gilmore, Michael Whitkanack, and Jessica White—were ARcare's patients "in the past," prior to the cyberattack. App. 22-30; R.Doc.19, at 10-18, ¶¶ 42, 50, 23, 59.[2] Plaintiffs allege that, in advance of receiving treatment, they filled out standard forms requiring them to provide personal and medical information to ARcare. *Id.* They allege that, following the breach, they spent time dealing with the allegedly related consequences of the data breach and remain concerned about the potential for loss of privacy and fraud. App. 23-29; R.Doc.19, at 11-17, ¶¶ 45-49, 53-58, 26-31, 62-64.

2. After initially filing separate putative class actions against ARcare that were subsequently consolidated, plaintiffs filed the operative complaint in federal court on behalf of themselves and all other persons whose information might allegedly have been compromised in the cyberattack—according to the complaint, a class of approximately 345,000 individuals. App. 13-82; R. Doc.19, at 1-70.[3] The complaint,

---

[1] All citations to the appendix refer to Appellant's appendix. Citations to the addendum refer to the corrected Appellant's addendum.

[2] The complaint was originally filed with misnumbered paragraphs.

[3] Hale, Gilmore, and White originally filed in the United States District Court for the Eastern District of Arkansas; Whitkanack originally filed in in Arkansas state

*Continued on next page.*

which alleges federal jurisdiction under the Class Action Fairness Act, includes four state-law counts—negligence, breach of implied contract, unjust enrichment, and breach of fiduciary duty—each centering around ARcare's failure to protect plaintiffs' personal information. App. 17, 45; R.Doc.19, at 5, 33, ¶¶ 20, 122. Plaintiffs sought a variety of financial and injunctive relief for actual or threatened identity theft, including out-of-pocket expenses associated with curing fraudulent activity on their accounts. *See, e.g.*, App. 66-67, 69-70; R.Doc.19, at 54-55, ¶¶ 189-191, 206-208. In their complaint, plaintiffs also allege that they suffered "emotional distress" from the release of their personal information. App. 49; R.Doc.19, at 37, ¶ 132.

ARcare moved to substitute the United States as the defendant or, in the alternative, to dismiss the complaint on the ground that it was immune from the data-breach claims under § 233(a). R.Doc.25. The Department of Justice advised ARcare that the United States would not substitute itself for ARcare because it had determined that the case was "not one 'for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions,'" as required for coverage under 42 U.S.C. § 233(a). App. 86; R.Doc.35-2, at 1. The government also filed a notice to the court explaining its position and

---

court. ARcare removed Whitkanak's suit to federal court pursuant to 42 U.S.C. § 233(*l*)(2), which permits removal when the Attorney General does not appear in state court within 15 days of receiving notice of a lawsuit against a covered health center. R.Doc.35, at 6. The district court subsequently granted motions to consolidate plaintiffs' suits—as well as two others—and designated Hale's suit as the lead case. App. 8; R.Doc.17, at 1.

indicating its willingness to provide a statement of interest. R.Doc.27. At the court's invitation, the United States filed a statement of interest, pursuant to 28 U.S.C. § 517, opposing ARcare's motion. R.Doc.35. The United States explained that § 233(a) did not cover the conduct in question, and that, even if the court concluded otherwise, the statute did not provide for compelled substitution of the United States. R.Doc.35, at 9-28. Plaintiffs did not take a position on the motion. R.Doc.30, at 1.

The district court denied ARcare's motion. Section 233(a) did not cover the claims arising from the alleged cyberattack because "ARcare's failure to use 'reasonable security procedures and practices appropriate to . . . sensitive, unencrypted information,' as alleged in the complaint, is not a 'related function' sufficient to confer immunity." App. 148; Add. 6; R.Doc.39, at 6 (alteration in original). Unlike other cases finding coverage, the claims here did not involve "conduct that occurred during the course of medical treatment within the context of the provider-patient relationship." *Id.* Rather, the conduct alleged in the complaint—namely, "protecting private information on computer networks"—"occurred outside of the provision of medical services." App. 149; Add. 7; R.Doc.39, at 7. Indeed, the court observed that the conduct here was not even "'interwoven' with the provision of medical care." App. 149, R.Doc.39 at 7. "The nexus between protecting private information from cyberattacks and the provision of medical care is not sufficient to render ARcare's failure to protect that information a 'related function' under section 233(a)." *Id.* In denying ARcare's motion, the court stated in dicta that, contrary to the position of the

United States, it possessed jurisdiction to substitute the United States as defendant if the suit were within the scope of 42 U.S.C. § 233(a).

ARcare appealed the district court's denial of the motion to dismiss for lack of subject matter jurisdiction.

## SUMMARY OF ARGUMENT

1. In enacting the Health Centers Act, Congress sought to relieve covered health care centers of the burden of paying for medical malpractice insurance for their grant supported activities and provided immunity from suit "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions." 42 U.S.C. § 233(a). In order to trigger immunity, the "alleged damages giving rise to a lawsuit must arise from the provision of health care." *Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252, 260 (4th Cir. 2024).

The district court correctly denied ARcare's request to substitute the United States as defendant for plaintiffs' data-breach claims. As the Fourth Circuit explained with respect to materially identical claims, § 233 instructs that "the focus is on the function that caused the injury, and, here, [plaintiffs] w[ere] not injured by any health care provided by [ARcare]." *Ford*, 97 F.4th at 261. Rather, as in *Ford*, plaintiffs' claims arise from a cyberattack on ARcare's data storage system: the gravamen of plaintiffs' theory is that ARcare failed to safeguard their information contained in that database and that the loss of control over that personal information constituted a

harm. Plaintiffs do not allege deficient medical care or that the improper release of personal information occurred during the provision of such care.

2. The district court was mistaken, however, in concluding that, if § 233(a) had immunized ARcare, it possessed the authority to substitute the United States. Nothing in § 233, or any other provision of law, empowers district courts to substitute the United States in cases such as this where the plaintiff did not name the United States as defendant and where the United States has determined that the conduct in question is not covered.

## STANDARD OF REVIEW

This Court reviews the district court's legal conclusions regarding the denial of immunity de novo. *See Letterman v. Does*, 859 F.3d 1120, 1125 (8th Cir. 2017) (official immunity).

## ARGUMENT

## I. The United States Has Not Assumed Liability for the Claims Asserted in This Case

### A. Section 233 covers only personal injury claims arising from misfeasance in the provision of health care.

1. The FTCA's remedy against the United States is the sole remedy "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" by Public Health Service employees and deemed employees. 42 U.S.C. § 233(a); *see also id.* § 233(g)(1)(A) ("deem[ing]" provision "[f]or purposes of [42 U.S.C. § 233]"). The provision covers personal

injuries, including death, resulting from various types of health care—injuries from medical, surgical, or dental functions, as well as other "related" functions, which could include nursing, diagnostics (*e.g.*, radiology), or rehabilitative services (*e.g.*, physical therapy). *Id.* § 233(a). The federal assumption of liability includes cases in which these functions are the "subject-matter" of the claim. *See id.* § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). "[I]n order to trigger immunity," therefore, "alleged damages giving rise to a lawsuit must arise from the provision of health care." *Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252, 260 (4th Cir. 2024); *see also Mendez v. Belton*, 739 F.2d 15, 19-20 (1st Cir. 1984) (holding that discrimination in employment decisions was not covered because § 233(a) extends only to "suits that sound in medical malpractice").

The provision's scope reflects the functions that the Public Health Service was authorized to provide when § 233(a) was enacted. These included the provision of "medical, surgical, and dental treatment and hospitalization and optometric care … at remote medical facilities," 42 U.S.C. § 251(b), as well as the provision of "hospital and medical and dental care, including outpatient services, services of mobile clinics and public health nurses, and preventive care including immunizations and health examinations of special groups, such as school children" under the Indian health and medical service program. 21 Fed. Reg. 9805, 9834 (Dec. 12, 1956). In making the statute applicable to "related functions," Congress encompassed those health-care responsibilities and responsibilities of a similar type. *Ford*, 97 F.4th at 259 (quotation

10

marks omitted) ("[W]e read a 'related' function as fitting within th[e] category [of health care], or in other words, a field of health care outside of medicine, surgery, or dentistry.").

2.  The statute as a whole confirms that, under § 233(a), Congress only intended to provide coverage for claims where allegations of misfeasance in the provision of medicine, commonly known as medical malpractice, are the subject matter of the claim.

To approve a health center for coverage, the Secretary must first conclude that the center "implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions," but the Secretary does not need to make these findings regarding the health center's other activities.  42 U.S.C. § 233(h)(1).  The FTCA then replaces medical malpractice insurance, but not other types of insurance, such as data-breach insurance.  *See, e.g.*, *id.* § 233(m)(2) (§ 233 coverage satisfies "malpractice coverage requirements"); *id.* § 233(g)(1)(G)(ii); *id.* § 233(n)(1)(A), (D), (2)(C).  Once a claim is filed, the statute provides that if a deemed entity is entitled to "benefits under an insurance policy with respect to medical malpractice" and the United States is substituted for the defendant, those benefits shall be subrogated to the United States.  *Id.* § 233(g)(2).  It does not provide for subrogation of benefits for other types of liability.  *See generally id.* § 233(g).  And the Comptroller General must report on the "costs and the benefits to taxpayers of maintaining medical malpractice liability coverage" for federally funded health centers.  *Id.* § 233(n)(1)(A), (D), (2)(C); *see also*

Federally Supported Health Centers Assistance Act of 1995, Pub. L. No. 104-73, 109 Stat. 777, 777 ("An Act [t]o amend the [PHSA] to permanently extend and clarify malpractice coverage for health centers").  Whereas the rest of § 233 references medical malpractice, § 233(a) employs a descriptive phrase ("resulting from medical, surgical, dental, or related functions"), which makes clear that the scope of coverage turns on whether the suit resulted from "the performance" of a health care function and cannot be evaded by creative pleading.  *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000).

Section 233's other limitations also reinforce the scheme's focus on claims arising from misfeasance in the provision of medical care.  Damages must be "for personal injur[ies], including death."  42 U.S.C. § 233(a).  These are the types of damages that are likely to result from "[m]isfeasance in the provision of health care," whereas "[a] wider definition of 'related functions' may improperly broaden § 233(a) to encompass misfeasance that results in other types of damages, such as contract damages."  *Ford*, 97 F.4th at 260.  Additionally, the "deeming" of a health center generally applies only "with respect to services provided … to all patients of the entity."  42 U.S.C. § 233(g)(1)(B).  Services provided to nonpatients are covered only when the Secretary determines that "provision of the services to such individuals" "benefits patients," "facilitates the provision of services to patients," or is required by a contract.  *Id.* § 233(g)(1)(B), (C); 42 C.F.R. § 6.6(e) (listing situations in which services to nonpatients are covered, all of which involve health or medical services).

12

3. The relevant legislative history—of the PHSA, the Health Centers Act, and other related enactments—confirms that Congress designed the protections afforded under the Act to be limited to claims stemming from misfeasance in the provision of health care. *See* 116 Cong. Rec. 42,543 (1970) (impetus for § 233(a) was Surgeon General's request that, "in the event there is a suit against a [Public Health Service] doctor alleging malpractice, the Attorney General of the United States would defend them"); S. Rep. No. 94-1264, at 3 (1976) (later-enacted provision describing the PHSA as "legislation making the [FTCA] the exclusive remedy for malpractice" to provide immunity "from personal liability arising out of performance of their medical duties"), enacted as Pub. L. 94-464, 90 Stat. 1985 (1976), codified at 10 U.S.C. § 1089; H.R. Rep. No. 102-823, pt. 2 (1992) (referring, throughout, to medical malpractice and describing the Health Centers Act as making the FTCA "the exclusive remedy for medical malpractice claims" against deemed community health centers).

## B. The district court correctly found that plaintiffs' claims fall outside § 233's coverage.

1. Plaintiffs' claims here are not for damage "resulting from" anything ARcare did as part of a medical, surgical, dental, or related function. *See* 42 U.S.C. § 233(a). The statute instructs that "the focus is on the function that caused the injury and, here, [plaintiffs] w[ere] not injured by any health care provided by [ARcare]." *Ford*, 97 F.4th at 261. Nowhere do plaintiffs allege that ARcare provided deficient medical care. Nor do plaintiffs claim that, in providing treatment, an ARcare doctor

13

improperly collected data from plaintiffs. Plaintiffs do not allege that any of the providers who treated them did anything wrong at all. Indeed, plaintiffs do not even allege that they were patients of ARcare at the time of the data breach. App. 22-30; R.Doc.19, at 10-18, ¶ 42, 50, 23, 59. The damages plaintiffs allege thus did not "arise from any action taken by [ARcare] 'in [its] capacity as a doctor responsible for, [or] in the course of rendering medical treatment for' [them]." *Ford*, 97 F.4th at 260 (second and third alterations in original) (quoting *Cuoco*, 222 F.3d at 109).

Rather, plaintiffs' claims "arise[ ] out of" the "targeted cyberattack and data breach." App. 13; R.Doc.19, at 1, ¶ 1. The gravamen of plaintiffs' complaint is that ARcare "breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data." App. 45; R.Doc.19, at 33, ¶ 122. Each count identifies the relevant conduct as ARcare's failure to maintain the confidentiality of plaintiffs' data. App. 65; R.Doc.19, at 53, ¶ 186 (Count I); App. 69; R.Doc.19, at 57, ¶ 205 (Count II); App. 70-71; R.Doc.19, at 58-59, ¶¶ 212-214 (Count III); App. 73; R.Doc.19, at 73, ¶¶ 225-228 (Count IV). Plaintiffs' injuries, in turn, were sustained "as a direct result of the Data Breach." App. 48; R.Doc.19, at 36, ¶ 129; App. 66; R.Doc.19. at 54, ¶¶ 188-189 (Count I); App. 69; R.Doc.19, at 57 ¶ 206 (Count II); App. 71; R.Doc.19, at 59, ¶¶ 215-217 (Count III); App. 73-74; R.Doc.19, at 61, ¶ 230 (Count IV).

The district court rightly held that a "failure to use 'reasonable security procedures and practices appropriate to … sensitive, unencrypted information,' as alleged in the complaint, is not a 'related function' sufficient to confer immunity under section 233(a)." App. 148; Add. 6.; R.Doc.39, at 6 (alteration in original).

2. The Fourth Circuit, the only court of appeals to address whether the United States has assumed liability over such data-breach claims, held that it has not. *Ford*, 97 F.4th at 260. There, as here, the health center "requested, collected, and stored" the plaintiff's personal information in order to provide treatment and later suffered a "security breach" to its data-storage system. *Id.* at 254. And there, as here, the plaintiff filed a putative class action involving state-law claims alleging that the health care center failed to "adequately protect" the plaintiff's personal information. *Id.* at 255. The court explained that the plaintiff's alleged injuries did not fall within § 233(a) because, as here, "the allegedly improper release of [the plaintiff's personal information] did not occur because of [the health center's] performance of the provision of health care." *Id.* at 260.

As the Fourth Circuit explained, "[d]ata protection is not an activity the medical field in which [the health center] operates is 'particularly fitted to' execute, nor is any 'related' field of health care." *Ford*, 97 F.4th at 261. Rather, the duty to protect valuable personal data from theft is one that arises in many consumer-facing industries, and businesses routinely require individuals to provide sensitive data for a variety of purposes. Here, as in *Ford*, plaintiffs' "alleged injury could have resulted

from a data breach at a host of businesses to which [they] likely disclose[d] [their personal information], none of which are involved in the provision of health care, including an employer, an entity involved in a banking, financial, or real estate transaction, or an insurance company." *Id.* The breach here is the equivalent, in other words, to failing to prevent burglary, not medical malpractice. *See* App. 45; R.Doc.19, at 33, ¶ 122. That conclusion, the Fourth Circuit underscored, is "especially true" where—as in *Ford* and this matter—persons impacted by a data breach are no longer receiving medical care from the health center in question. *Ford*, 97 F.4th at 260; App. 22-30; R.Doc.19, at 10-18, ¶¶ 42, 50, 23, 59 (alleging that plaintiffs were patients of the health center "in the past").

Indeed, plaintiffs' claims would be identical if they had never received any medical treatment after providing the information at issue. As plaintiffs allege, each "was presented with standard medical forms to complete prior to [his or her] service" that requested sensitive personal information. App. 22-30; R.Doc.19, at 10-18, ¶¶ 42, 50, 23, 59. In plaintiffs' view, ARcare acquired a duty to plaintiffs when it acquired their data, not when it provided them with health care. *See, e.g.,* App. 63; R.Doc.19, at 51, ¶ 177). It breached that duty by failing to keep that data secure, not through the provision of deficient health care. Plaintiffs' claims encapsulate the concerns identified by the Fourth Circuit to demonstrate the inapplicability of § 233(a) to data-breach claims: "Consider a scenario where, in anticipation of receiving health care, Appellant provided her … information to [the health center] but never showed up for

her appointment. In that instance, Appellant would have suffered the same injury she alleges here from the data breach without ever even receiving treatment." *Ford*, 97 F.4th at 261. To extend coverage to such injuries would, as the Fourth Circuit recognized, create a rule with "no limiting principle." *Id.*

## C. ARcare's arguments to the contrary are unavailing.

ARcare's arguments are contrary to the text, purpose, and history of the PHSA and the Health Centers Act.

1. ARcare's reading of § 233(a) would expand its scope well beyond its text to encompass all conduct bearing a "distinct connection to medical care, treatment, services, and other medical functions," Br. 31 (quotation marks omitted). The term "related functions" does not effect an undefined assumption of government liability beyond medical care. "Within § 233(a), the language 'related functions' acts as a general catchall for specific functions – 'the performance of medical, surgical, [or] dental' functions." *Ford*, 97 F.4th at 259 (alteration in original) (quoting 42 U.S.C. § 233(a)). And, under the familiar *ejusdem generis* canon, a "catchall must be interpreted in light of its surrounding context and read to 'embrace only objects similar in nature' to the specific examples preceding it." *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2082 (2024). Here, "[a]s a matter of plain meaning, medical, surgical, and dental all fit into one category – they are adjectives that describe various fields of health care." *Ford*, 97 F.4th at 259. A "related function" must be read as "fitting within that category": "a field of health care outside of medicine, surgery, or dentistry," such as

17

nursing, radiology, or physical therapy, and others that the Public Health Service provided at the time of § 233(a)'s enactment. *Id.*; *see supra* pp. 10-11. "But the catchall cannot be fairly read" to extend to the "radically different" function of protecting data from cyber threats. *Purdue Pharma*, 144 S. Ct. at 2083 (quotation marks omitted).

ARcare urges (Br. 34) that reading the statute to exclude torts such as security breaches would render "related functions" superfluous. Not so. The references preceding and following "related functions" inform the understanding of what constitutes a "related function" for purposes of the statute. Indeed, on ARcare's reading, the references to surgical and dental services as well as to related functions including studies and investigations would be unnecessary: the statute would have the same scope had it simply read "medical and related functions." *See* Br. 30-31 (stating that "the term 'medical' is necessarily broad" and encompasses, among other things, "problems of birth, death, and living" quotation marks omitted)). To the contrary, the text of the statute establishes that "medical" function refers to the quintessential doctor-patient provision of care, "dental" and "surgical" functions cover separate domains, and "related functions" is used to capture other similar practices. *See Ford*, 97 F.4th at 259 & n.4 (explaining that surgery is not "merely a subset of medicine"). And, as discussed, the statute's coverage and the meaning of related functions should also be informed by other statutory limitations, including the limitation to personal injuries of the kind arising from medical care. *See supra* pp. 11-12.

2. ARcare mistakenly seeks to rely on the Supreme Court's decision in *Hui v. Castaneda*, 559 U.S. 799 (2010), where the Court held that the immunity afforded by § 233 covers not only state malpractice claims, but also *Bivens* claims that involve the performance of medical or related functions. The Court explained that, as to the covered "subject-matter"—meaning the defendant's underlying conduct—the provision's text is "broad" and "comprehensive" and thus does not limit coverage only to particular causes of action. *Id.* at 806. As relevant here, the decision emphasizes that coverage extends only to the statutorily defined conduct—injuries resulting from the performance of medical, surgical, dental, or related functions.

*Hui* also confirms that, because immunity turns on the "subject-matter" giving rise to the injury, its coverage is not limited to doctors. 559 U.S. at 806. If the claims identify an injury that arose from misfeasance in the provision of medicine but assert a cause of action against a different covered defendant (such as a board member, *see* 42 U.S.C. § 233(g)(1)(A)), those claims could be within the scope of § 233(a). Contrary to ARcare's claim (Br. 26), that a board member as well as a physician might be liable under state law does not vitiate the immunity conferred by the statute. ARcare similarly misunderstands the relevant inquiry in observing (Br. 24-25) that, at the time of § 233(a)'s enactment in the PHSA, Public Health Service employees performed jobs that did not involve the provision of medicine. That observation does not change the scope of the "subject matter" that Congress chose to immunize. The question under the statute is not whether the employee is categorized as

"administrative personnel" (Br. 25), but whether they are engaged in the provision of medicine.

3. ARcare observes (Br. 22) that "[t]he ultimate viability of a plaintiff's claims under the FTCA is irrelevant to a deemed [Public Health Service] defendant's absolute immunity under § 233(a)." That is correct but does nothing to advance its argument. The district court refused to substitute the United States because plaintiffs' claims do not fall within the scope of § 233, not because suit would be barred under the FTCA. ARcare also fails to recognize that one consequence of its expansive reading of § 233(a) would be to sweep in a variety of claims that might be subject to various FTCA exceptions such as its discretionary function and misrepresentation exceptions and the exception for several enumerated torts. *See* 28 U.S.C. § 2680. Plaintiffs would thus be left with no remedy for certain claims outside the provision of medical services and related functions.

4. ARcare's references (Br. 37-44) to legal and ethical obligations of medical providers to keep patient data confidential further highlight the error of its argument. As the Fourth Circuit explained, "[s]imply because [a health center] has a duty to keep [the patient's] information confidential does not mean that the release of [personal information] resulted from [the health center's] provision of health care." *Ford*, 97 F.4th at 262. Indeed, while hospitals have a duty to protect private information, so do other businesses. *Id.* Thus, "to determine whether § 233(a) immunity applies, the focus is on the function – not the duty." *Id.*

20

Plaintiffs' allegations concern ARcare's data-security function, which is a "by-product" of running any operation possessing sensitive information and thus remains "separate and apart from the provision of health care." *Ford*, 97 F.4th at 262. And while ARcare asserts that the "impact to patients is distinctly medical" (Br. 41), plaintiffs "do[] not allege that [ARcare] provided deficient health care or improperly collected [their] information as a part of [their] treatment," *Ford*, 97 F.4th at 262. Rather, plaintiffs' complaint identifies only impacts not specific to a medical setting, such as the loss of control over their personal information and the risk of future identity theft, many of which also would not constitute personal injuries. *See supra* p. 14.

5. The district court correctly rejected ARcare's contention (Br. 45-47) that certain prerequisites for receiving federal grant funding weigh in favor of coverage here. ARcare principally points to a statutory provision requiring that, to be eligible to receive federal funds, a center must "have an ongoing quality improvement system that includes clinical services and management, and that maintains the confidentiality of patient records." 42 U.S.C. § 254b(k)(3)(C).

Section 254b sets forth statutory prerequisites to receiving federal grant money, it does not govern the scope of § 233(a) coverage. *See* 42 U.S.C. § 254b(k)(3) ("[T]he Secretary may not approve an application for a grant under subparagraph (A) or (B) of subsection (e)(1) unless . . . ."). As the Fourth Circuit explained, "the requirements to receive federal grant money on which [the health center] relies are separate and apart

from § 233(a) immunity[,]" and "there is no mention of data security or systems in § 233." *Ford*, 97 F.4th at 261-262; *see also* App. 148; Add. 6; R.Doc.39, at 6. Indeed, "a health center that qualifies to receive federal grant money need not even apply to be considered a [Public Health Service] employee"; it could instead choose to self-insure against claims of medical malpractice. *Ford*, 97 F.4th at 216 (citing 42 U.S.C. § 233(g)(1)(G)(ii)). And HHS places numerous eligibility requirements on grant recipients that are not within the scope of § 233(a). *Compare* 42 C.F.R. § 51c.109 (requiring that grantees comply with non-discrimination laws) *with Mendez*, 739 F.2d at 20 (employment discrimination is not within the scope of § 233(a)). ARcare's approach—under which eligibility requirements are transformed into "related functions"—would make the United States liable when a grant recipient violated the conditions on the grant and would eliminate a significant incentive for grant recipients to comply with applicable statutes.

6. ARcare would not prevail even assuming that § 233(a) encompassed matters that "bear[ ] a distinct connection to" or are "interwoven with" the medical practices listed in that provision (Br. 36-37). As the district court held, the data storage practices that are the subject of plaintiffs' complaint were "not 'interwoven' with the provision of medical care." App. 149; Add. 7; R.Doc.39, at 7. In reaching that conclusion, the court distinguished those cases in which the conduct at issue was found to be "intertwined with the[ ] provision of medical services." *Id.* (quoting *Friedenberg v. Lane County*, 68 F.4th 1113, 1130 (9th Cir. 2023)). In *Friedenberg*, the

Ninth Circuit found that § 233(a) covered the "duty to report a court-ordered …

patient's refusal to comply with the medical terms of his probation" because the

"reporting obligation" involved "the evaluation of a patient."  68 F.4th at 1118, 1129.

Here, the data security obligation did not involve the provision of care to any patient.

And whereas in *Friedenberg* the employees' duty was "tied to their status as medical

health professionals," *id.* at 1130, the duty plaintiffs allege here is tied to ARcare's

possession of sensitive personal information and would apply to a non-medical

professional obtaining such data.  App. 149; Add. 7; R.Doc.39, at 7.

## II.     Section 233 Does Not Provide Authority to Compel Substitution of the United States

If this Court were to hold that § 233(a) covers ARcare for plaintiffs' data-

breach claims, this Court should reverse with instructions to dismiss the action against

ARcare.  Contrary to the district court's statements in dicta below, § 233 does not

authorize courts to order the substitution of the United States where the United States

has declined to substitute itself.

In general, "the plaintiff is the master of the complaint," *Holmes Grp., Inc. v.

Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002), and, thus, the plaintiff

chooses who to sue, where to sue, and which claims to advance.  In assessing its own

jurisdiction and the nature of the plaintiff's claims, the court begins with the

"plaintiff's properly pleaded complaint."  *Id.* (emphasis and quotation marks omitted).

Because the lower federal courts "are creatures of statute, . . .  they have only so much

of the judicial power of the United States as the acts of Congress have conferred upon them." *Bath County v. Amy*, 80 U.S. (13 Wall) 244, 247-48 (1871). Thus, where the plaintiff has named a particular defendant in its complaint, the court must, as a general matter, respect that choice and may alter it only insofar as Congress has explicitly empowered it to do so.

In this case, plaintiffs brought suit against ARcare. The United States declined to substitute itself on the ground that ARcare's conduct was not covered under § 233(a). Nothing in § 233, or any other provision of law, empowers a district court to compel the substitution of the United States as defendant in these circumstances. "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted) (second alteration in original). And as § 233 itself makes clear, Congress knew how to create a substitution mechanism where it intended to. The statute envisions substitution of the United States when, in cases filed in state court, the Attorney General certifies "that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose," providing that after such certification and subsequent removal to federal court, the case shall be "deemed a tort action brought against the United States." 42 U.S.C. § 233(c). Similarly, in suits filed in federal court, the United States may determine that the conduct is covered and seek to intervene and substitute itself under "the ordinary rules of evidence and procedure," *Hui*, 559 U.S. at 811, namely Federal Rule of Civil

Procedure 24, which permits a party to intervene in and defend actions in which it was not originally named. In neither case does the relevant provision empower the court to compel the substitution of the United States where it has not sought to appear in the case.

The statute's background confirms that conclusion. Section 233(a) was modeled on the Federal Drivers Act, Pub. L. No. 87-258, 75 Stat. 539 (1961). *See Levin v. United States*, 568 U.S. 503, 507 n.2 (2013) (explaining that § 233 was "patterned on the Federal Drivers Act"). Before it was superseded by the Westfall Act, courts interpreted the Federal Drivers Act to provide an immunity defense and did not recognize a mechanism for compelling the substitution of the United States. *See, e.g.*, *Seiden v. United States*, 537 F.2d 867, 869 (6th Cir. 1976) (denying mandamus petition seeking to compel Attorney General to defend actions under the Federal Drivers Act and noting that defendants could assert personal immunity in the absence of Attorney General scope certification); *Lemley v. Mitchell*, 304 F. Supp. 1271 (D.D.C. 1969) (same).

The absence of such a mechanism in the PHSA or the Federal Drivers Act contrasts sharply with the later enacted Westfall Act, which expressly provides that if the Attorney General "refuse[s] to certify scope of office or employment" for purposes of that statute, the United States nevertheless "shall be substituted as the party defendant" if the district court "find[s] and certif[ies] that the employee was acting within the scope of his office or employment" at the time of the allegedly

tortious conduct.  28 U.S.C. § 2679(d)(3).  The explicit discussion of substitution in the Westfall Act—which post-dates § 233(a)—suggests that Congress would not have understood the mere provision of immunity in § 233 to carry with it an implied authorization for involuntary substitution and that Congress knew how to add such an authorization.  *See Hui*, 559 U.S. at 806-07 (drawing a similar contrast between statutory silence in § 233 and express statutory language in the Westfall Act).  Indeed, Congress enacted the Health Centers Act just four years after the Westfall Act and chose to add health centers to § 233 rather than in the Westfall Act.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed, and the case remanded for further proceedings.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

JONATHAN D. ROSS
*United States Attorney*

MARK B. STERN
DANA L. KAERSVANG
*s/ Kevin J. Kennedy*
KEVIN J. KENNEDY
*Attorneys, Appellate Staff*
*Civil Division, Room 7234*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4214*
*Kevin.J.Kennedy@usdoj.gov*

September 2024

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 6489 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

*s/ Kevin J. Kennedy*
Kevin J. Kennedy

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Kevin J. Kennedy*
Kevin J. Kennedy