# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

GREG HALE, et al.,

*Plaintiffs-Appellees,*

v.

ARCARE, INC.,

*Defendant-Appellant.*

*On Appeal from the United States District Court*
*For the Eastern District of Arkansas, No. 2:22-cv-00117*
*Hon. Brian S. Miller*

## APPELLANT ARCARE, INC.'S PETITION FOR REHEARING AND REHEARING EN BANC

Matthew S. Freedus
Rosie Dawn Griffin
Powers Pyles Sutter & Verville PC
1250 Connecticut Avenue NW, 8th Floor
Washington, DC 20036
Tel: 202.466.6550
matthew.freedus@powerslaw.com
rosie.griffin@powerslaw.com

*Attorneys for Defendant-Appellant ARcare, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................... iii

INTRODUCTION AND RULE 40(b)(2) STATEMENT .........................................1

COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE....................2

REASONS FOR GRANTING REVIEW ...............................................................7

    I.    The Panel's Decision Conflicts with an Authoritative Decision of the Ninth Circuit ................................................................................................................7

    II.   The Panel's Limited Interpretation of "Related Functions" is in Tension with the Supreme Court's Interpretation of PHS Act Immunity as Comprehensive ..................................................................................................11

    III.  The Petition Presents an Exceptionally Important Question ........................13

CONCLUSION ....................................................................................................15

Appellate Case: 24-1726    Page: 2    Date Filed: 04/13/2026 Entry ID: 5628643

# TABLE OF AUTHORITIES

**Cases**

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000) ...................................................................2

*Ford v. Sandhills Med. Found., Inc.*,
97 F.4th 252 (4th Cir. 2024) ...........................................................6, 7, 8

*Friedenberg v. Lane County*,
68 F.4th 1113 (9th Cir. 2023) ......................................................*passim*

*Hui v. Castaneda*,
559 U.S. 799 (2010)...................................................................*passim*

*Kezer v. Penobscot Cmty. Health Ctr.*,
No. 15-cv-00225 (D. Me. Mar. 21, 2019) ......................................14, 15

*Krandle v. Refuah Health Ctr., Inc.*,
No. 22-cv-4977, 2024 WL 1075359 (S.D.N.Y. Mar. 12, 2024) ............10, 12, 13

*Moretti v. Letty Owings Ctr.*,
No. 21-cv-1525, 2023 WL 6216279 (D. Or. Sept. 25, 2023)...........................14

*Pomeroy v. United States*,
No. 17-cv-10211, 2018 WL 1093501 (D. Mass. Feb. 27, 2018).........................7

*United States v. Smith*,
499 U.S. 160 (1991)..................................................................12

*United States v. Stanley*,
483 U.S. 669 (1987)..................................................................12

**Federal Statutes**

42 U.S.C. § 233(a) ................................................................*passim*

42 U.S.C. § 233(g) ...................................................................1, 3

42 U.S.C. § 233(h) ................................................................1, 2, 3

42 U.S.C. § 233(h)(1)............................................................2, 13, 15

Appellate Case: 24-1726     Page: 3     Date Filed: 04/13/2026 Entry ID: 5628643

42 U.S.C. § 233(h)(4)......................................................................................3

42 U.S.C. § 254b............................................................................................12

42 U.S.C. § 254b(k)(3)(C) ...............................................................................4

42 U.S.C. § 1320d-2(d)(2)(A)–(B)....................................................................4

**Regulations**

42 C.F.R. § 51c.110 ........................................................................................4

42 C.F.R. § 51c.303 ........................................................................................4

45 C.F.R. § 164.306(a)(1)–(4) ......................................................................4, 5

45 C.F.R. § 164.530(c)(1)................................................................................5

45 C.F.R. § 164.530(c)(2)(i) ............................................................................5

Standards for Privacy of Individually Identifiable Health Information,
    65 Fed. Reg. 82,462 (Dec. 28, 2000)........................................................5, 10

**Rules**

Fed. R. App. P. 40...........................................................................................1

Fed. R. App. P. 40(b)(2)(C)..............................................................................1

Fed. R. App. P. 40(b)(2)(D)..............................................................................1

**Other Authorities**

Dartmouth, *MS in Medical Informatics – On-Campus*,
    https://healthsciences.dartmouth.edu/education/degree-programs/master-
    science-medical-informatics/program-overview ....................................................9

Harvard Medical School Student Handbook § 4.18, *Patient Confidentiality and
    HIPAA*,
    https://medstudenthandbook.hms.harvard.edu/418-patient-confidentiality-and-
    hipaa (Dec. 2018) ........................................................................................10

H.R. Rep. No. 102-823 (1992)........................................................................15

Appellate Case: 24-1726    Page: 4    Date Filed: 04/13/2026 Entry ID: 5628643

H.R. Rep. No. 104-398 (1995)..............................................................................13

Stanford University School of Medicine MD Student Handbook § 3.3, *Data Security and Privacy (HIPAA) Training*, https://med.stanford.edu/md/mdhandbook/section-3-md-requirements-procedures/section-3-3-data-security-and-privacy-hipaa-training.html (Aug. 2025) ..........................................................................................................10

United States Dept. of Health and Human Servs., Health Res. & Servs. Admin., U.S. Dep't of Health & Hum. Servs., *Calendar Year 2022 Requirements for Federal Tort Claims Act (FTCA) Coverage for Health Centers and Their Covered Individuals* (Feb. 9, 2021), https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2021-01.pdf.........5

United States Public Health Service, *Types of Profession Opportunities*, https://www.usphs.gov/professions/health-services/ ...........................................9

Appellate Case: 24-1726   Page: 5   Date Filed: 04/13/2026 Entry ID: 5628643

Defendant-Appellant ARcare, Inc. ("ARcare") respectfully petitions for rehearing or rehearing en banc pursuant to Fed. R. App. P. 40.

## INTRODUCTION AND RULE 40(B)(2) STATEMENT

Rehearing is warranted because the Panel's decision puts the Eighth Circuit on the wrong side of a circuit split on a question of exceptional importance—*i.e.*, the meaning of "related functions" in the Public Health Service (PHS) Act's absolute immunity provision, which shields PHS employees from both liability and the burdens of any lawsuit resulting from their "performance of medical, surgical, dental, or related functions." 42 U.S.C. § 233(a). The Panel's construction, while in agreement with a decision of the Fourth Circuit, is in direct conflict with an authoritative decision of the Ninth Circuit, *Friedenberg v. Lane County*, 68 F.4th 1113 (9th Cir. 2023). Fed. R. App. P. 40(b)(2)(C). The Panel's narrow interpretation is also at odds with the Supreme Court's unanimous instruction that the "comprehensive" protection § 233(a) affords is expressed in "broad" language, covering causes of action both "known and unknown" when enacted. *Hui v. Castaneda*, 559 U.S. 799, 806, 810 (2010). Fed. R. App. P. 40(b)(2)(D).

The issue in this case is whether Defendant-Appellant ARcare, Inc.—a federally-supported community "health center" that is "deemed" to be a federal employee under provisions of the PHS Act—can claim PHS Act immunity from a lawsuit arising from its duty to safeguard patient information. 42 U.S.C. § 233(g),

1

(h). The PHS Act "grants absolute immunity to PHS officers and employees for actions arising out of their performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui*, 559 U.S. at 806, 811–13. In extending that same protection to federally-supported health centers like ARcare, Congress made clear that PHS Act immunity covers not only "the risk of malpractice" but also "the risk of lawsuits arising out of any health or health-related functions performed by the entity." 42 U.S.C. § 233(h)(1); *accord Friedenberg*, 68 F.4th at 1128 ("While Congress's concerns regarding malpractice insurance premiums were the driving force behind the legislation, Congress did not limit § 233(a) immunity to 'only' malpractice claims when it could have.") (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000)).

Rehearing is warranted to bring clarity and uniformity to the scope and application of PHS Act immunity; without it, the health center program and its underserved patient population will suffer.

**COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE**

This case arises from a federally-supported health center's alleged failure to safeguard its patients' confidential information, and a resulting dispute as to the proper defendant to answer for Plaintiffs' claims.

Defendant-Appellant ARcare, Inc. (ARcare) is a community-based "health center" deemed by the United States Department of Health and Human Services

2

(HHS) to be a Public Health Service (PHS) employee. Slip Op. 2. As such, ARcare is entitled to the same immunity the PHS Act affords to actual PHS employees. 42 U.S.C. § 233(g), (h), (h)(4) (conditioning deemed status on receipt of "funds under section 254b of this title"). That protection is an absolute immunity from any action or proceeding resulting from ARcare's performance of "medical, surgical, dental, or related functions." § 233(a). When § 233(a) immunity applies, the United States is substituted as the defendant and the action proceeds as one brought under the Federal Tort Claims Act (FTCA), regardless of whether the claim is viable under the FTCA's limited waiver of sovereign immunity. *Id*. (granting absolute immunity by making the FTCA remedy "exclusive of any other civil action or proceeding").

Plaintiffs-Appellees, patients of ARcare, alleged ARcare failed to safeguard personally identifiable and protected health information they had provided to ARcare during patient visits and as a condition for receiving care. Slip Op. 3. Plaintiffs' information—including "medical treatment information, prescription information, [and] medical diagnosis or condition information," App.13–14—was disclosed when third-party threat actors breached ARcare's electronic health record system. Slip Op. 3.

Based on the longstanding and well-recognized obligation of medical providers to safeguard the confidentiality of patient information, ARcare argued both here and below that its obligation to protect its patients' information from

3

unauthorized use and disclosure constituted the "performance of medical . . . or related functions." § 233(a). To demonstrate the close connection between its clinical and confidentiality functions, ARcare relied on, *inter alia*, the PHS Act's health center program provisions, HHS's health center program regulations, the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and its implementing regulations, and HHS's application for deemed PHS employee status—all of which impose confidentiality obligations on ARcare in its capacity as a medical provider and with the aim of protecting the patient-provider relationship. *See, e.g.,* 42 U.S.C. § 254b(k)(3)(C) (conditioning health center funding on maintenance of "an ongoing quality improvement system that includes clinical services and management, and that maintains the confidentiality of patient records"); 42 C.F.R. § 51c.303 (requiring ARcare to "[i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A"); 42 C.F.R. § 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent . . . ."). As required by law, ARcare's confidentiality functions include ongoing risk assessment and protective measures against "any reasonably anticipated . . . threats or hazards to the security or integrity of the information" as well as "any reasonably anticipated . . . unauthorized uses or disclosures of the information." *See* 42 U.S.C. § 1320d-2(d)(2)(A)–(B); 45 C.F.R.

4

§ 164.306(a)(1)–(4); 45 C.F.R. § 164.530(c)(1), (2)(i); *see also* Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82,462-01, 82,467 (Dec. 28, 2000), *codified at* 45 C.F.R. pt. 160 ("The need for privacy of health information, in particular, has long been recognized as critical to the delivery of needed medical care."). Moreover, HHS required ARcare, in applying for deemed status, to acknowledge that its "failure to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements, may result in disapproval of [the HHS] deeming application." HHS, Health Resources and Services Administration, Calendar Year 2022 Requirements for [FTCA] Coverage for Health Centers and Their Covered Individuals, 16 https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2021-01.pdf; *see id.* at 12–13 (identifying compliance with "HIPAA medical record confidentiality requirements" as among the "areas/activities of highest clinical risk for the health center").

Despite the critical connection between confidentiality and effective medical care, the district court concluded the "nexus between protecting private information from cyberattacks and the provision of medical care is not sufficient to render ARcare's failure to protect that information a 'related function' under section 233(a)." Add. 7.

Appellate Case: 24-1726    Page: 10    Date Filed: 04/13/2026 Entry ID: 5628643

The Panel took a different, and much more far-reaching approach, framing its decision as a choice between the Fourth Circuit's and the Ninth Circuit's conflicting constructions of "related functions" in § 233(a), and finding "the Fourth Circuit's interpretation of § 233(a)" to be "more persuasive than" the Ninth Circuit's interpretation. Slip Op. 6 (citing *Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252, 254 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025), and *Friedenberg v. Lane County*, 68 F.4th 1113 (9th Cir. 2023)).

In *Friedenberg*, the Ninth Circuit read "related functions" broadly, consistent with ordinary usage, to mean functions with a "distinct connection to the provision of medical, surgical, or dental services." 68 F.4th at 1130. In so deciding, the Ninth Circuit made clear that § 233(a) immunity is not "tied to whether the tort transpired in caring for the patient," concluding such a "reading would render 'related functions' superfluous" and limit § 233(a) immunity to garden variety malpractice claims. *Id*. at 1127–28.

For its significantly narrower take on "related functions," the Fourth Circuit, in *Ford*, construed the words to encompass activity in "a field of health care outside of medicine, surgery, or dentistry." 97 F.4th at 259. The reading rests on the very premise *Friedenberg* rejects—*i.e.*, that "'related functions' explicitly encompasses only the provision of health care." *Id.* at 260. The Fourth Circuit did not acknowledge the conflict between its decision and *Friedenberg*.

Appellate Case: 24-1726    Page: 11    Date Filed: 04/13/2026 Entry ID: 5628643

Like *Ford*, the Panel read "related functions" as "susceptible to more than one interpretation," and utilized statutory canons to conclude that "related functions are activities having similar characteristics or that are specially fitted to the preceding enumerated categories of medical, surgical, or dental functions." Slip Op. 7.

## REASONS FOR GRANTING REVIEW

### I. The Panel's Decision Conflicts with an Authoritative Decision of the Ninth Circuit

The Panel's significant narrowing of § 233(a) immunity—as applying only to PHS employees' "performance of an action taken in the course of rendering treatment," slip op. 6—is in irreconcilable conflict with the Ninth Circuit's decision in *Friedenberg v. Lane County*, 68 F.4th 1113 (9th Cir. 2023).

In *Friedenberg*, the Ninth Circuit concluded that Congress, in "plain text," provided an immunity right to PHS employees that "plainly encompasses damages stemming from the performance of medical and 'related' functions." *Friedenberg*, 68 F.4th at 1128 (citing *Pomeroy v. United States*, No. 17-cv-10211, 2018 WL 1093501, at *2 (D. Mass. Feb. 27, 2018) for its conclusion that "[t]he statute must cover a broader scope of activity than the delineated categories alone, or else 'related functions' would be mere superfluity"). Considering the meaning of "related functions" as an issue "of first impression in [that] circuit," the Ninth Circuit held the relevant "statutory language clearly shows that immunity is not tied to whether the tort transpired in caring for the patient," *id.* at 1127, and, consistent with the

7

Supreme Court's holding in *Hui*, 559 U.S. at 801–02, "does not depend on whether the [plaintiff's] claim is framed as one of medical malpractice." *Friedenberg*, 68 F.4th 1127–28 (collecting decisions of courts in the First, Second, Fourth, Ninth, and Tenth circuits in accord).

Reading "related" to convey connection rather than similarity, the Ninth Circuit held that "related functions" in 42 U.S.C. § 233(a)'s recitation of immunized conduct means functions having "*a distinct connection* to the provision of medical, surgical, or dental services." *Id.* at 1130 (emphasis added). The conduct at issue in *Friedenberg*—the failure to report a patient's violations of his court-ordered treatment plan—was one such function because the obligation to report arose from the providers' "capacities as medical professionals" and "was tied" to that professional status. *Id.* at 1129 (endorsing district court cases construing "related functions" to include activity closely connected to medical functions).

The Panel rejected this reading, finding "more persuasive" the Fourth Circuit's conclusion that "related functions" means "a category in the [sic] field of health care outside of medicine, surgery, or dentistry." Slip Op. 6 (citing *Ford*, 97 F.4th at 259). Accordingly, the Panel concluded that Plaintiffs' claims, even though they "may . . . relate to . . . treatment," were not related to medical functions because

8

they "did not arise from actions taken . . . in the course of medical treatment." Slip Op. 8.[1]

The Panel's construction of "related" to mean "similar" cannot be reconciled with the Ninth Circuit's reading of "related" to mean "connected." The conflict is clearly illustrated by applying the Panel's construction to the allegations in *Friedenberg*. The failure to report at issue there, though "intertwined with the[] provision of medical services," 68 F.4th at 1130, would not have passed the Panel's test. The obligation to report violations of a treatment plan (and potential threats to the public) is not "a branch of health care" sharing "similar characteristics" with surgery or dentistry. Slip Op. 7. The district court decisions the Ninth Circuit found "persuasive" in *Friedenberg* would likewise fail the Panel's test: assessing and reporting suspected child abuse is not a branch of medicine, nor is the provision of appropriate food based on patient disability, nor is proper credentialing of providers,

---

[1] Even applying the Panel's "field of health care" test, the implementation and management of systems to protect patient confidentiality may well satisfy it. The Public Health Service itself recognizes "health information managers" and "informatics specialists" as PHS career paths. USPHS, *Health Services – Types of Profession Opportunities*, https://www.usphs.gov/professions/health-services/. And Medical Informatics is a recognized graduate discipline that "has quickly expanded as a field as we face modern and complex questions in healthcare systems and resulting health outcomes." *See* Dartmouth, *MS in Medical Informatics – On-Campus*, https://healthsciences.dartmouth.edu/education/degree-programs/master-science-medical-informatics/program-overview (noting program includes instruction in "health data security").

9

nor is the disclosure of patient information. *Friedenberg*, <u>68 F.4th at 1129</u> (endorsing decisions premised on such claims).

Applying the Ninth Circuit's test to this case likewise makes the conflict plain. The Panel's recognition that "data security is now integrated into the modern practice of medicine with the transition to electronic medical records" would have resolved the inquiry in ARcare's favor under *Friedenberg*. Slip Op. 7. Functions integrated into the practice of medicine are surely related to medical functions, if not properly characterized as medical functions themselves.[2] *Friedenberg*, <u>68 F.4th at 1130</u> (concluding function "intertwined with [the deemed defendant's] provision of medical services" is "at the very least" a "related function" within the meaning of § 233(a)); *see Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, <u>2024 WL 1075359</u>, at *9 (S.D.N.Y. Ma<u>r. 12</u>, <u>2024)</u> (concluding maintaining confidentiality is a "function . . . essential to the practice of medicine"); *see also* <u>65 Fed. Reg. 82,462</u>-01, 82,467 (recognizing the "need for privacy of health information" as "critical to

---

[2] Patient confidentiality is a core component of medical education, taught as an aspect of medical professionalism and required as a prerequisite to clinical practice. *See, e.g.*, Harvard Medical School Student Handbook § 4.18, https://medstudenthandbook.hms.harvard.edu/418-patient-confidentiality-and-hipaa (Dec. 2018) (describing patient confidentiality as "a critical value for physicians and physicians-in-training"); Stanford University School of Medicine MD Student Handbook § 3.3, https://med.stanford.edu/md/mdhandbook/section-3-md-requirements-procedures/section-3-3-data-security-and-privacy-hipaa-training.html (Aug. 2025) (requiring medical students to complete patient privacy and data security training before beginning classes and conditioning clinical advancement on annual completion thereafter).

10

the delivery of needed medical care"). Indeed, in *Friedenberg*, the Ninth Circuit endorsed a Connecticut district court's conclusion "that § 233 immunity applied to a doctor's disclosure of patient information because such actions concerned 'the medical functions of providing treatment and the related function of ensuring the privacy of patient medical information.'" *Friedenberg*, 68 F.4th at 1129 n.9.

## II. The Panel's Limited Interpretation of "Related Functions" is in Tension with the Supreme Court's Interpretation of PHS Act Immunity as Comprehensive

The Panel's decision—in particular its application of a limiting principle in interpreting "related functions"—is at odds with the Supreme Court's recognition, in *Hui v. Castaneda*, that the immunity Congress provided to PHS employees is "comprehensive." *Hui*, 559 U.S. at 806. Although the Panel noted ARcare's invocation of *Hui*, slip op. 3, it neither addressed *Hui*'s expansive view of the statute's "comprehensive" immunity nor acknowledged the decision's implicit recognition that an a-textual "limiting principle" is both unnecessary and contrary to § 233(a)'s "broad" language. *See Hui,* 559 U.S. at 806, 810.

The Panel's concern that without its limiting principle, "[a]lmost any task a hospital [sic] employee completes" could fall within the scope of § 233(a) immunity

11

and expose the United States to significant liability, slip op. 8, is misplaced.[3] As the Supreme Court recognized in *Hui*, the PHS Act's immunity and the FTCA's remedy are legally and logically distinct. *Hui*, 559 U.S. at 808. Considering whether § 233(a) immunized individual PHS defendants from a *Bivens* action, the Supreme Court held that § 233(a)'s "broad" reference to "any civil action or proceeding" "easily accommodates both known and unknown causes of action." *Id*. at 806. In so holding, *Hui* drew a clear distinction between the scope of § 233(a) immunity, which is a broadly defined individual right, and the "exclusive" remedy, which is a limited waiver of sovereign immunity via the FTCA. *See id*. at 807 ("Even in circumstances in which a *Bivens* remedy is generally available, an action under *Bivens* will be defeated if the defendant is immune from suit.") (citing *United States v. Stanley*, 483 U.S. 669, 684 (1987)); *see also Krandle*, 2024 WL 1075359, at *7 ("The scope of the FTCA—and the scope of the United States' waiver—is a separate question which § 233 says nothing about.") (citing *United States v. Smith*, 499 U.S. 160, 162 (1991)).

Contrary to the Panel's decision, a holding that § 233 immunity applies to functions related to a health center's medical functions would not broaden the United States' liability beyond that already encompassed in the FTCA's limited waiver of

[3] The Panel's repeated but mistaken reference to ARcare as a "hospital," slip op. 8–9, overstates, and suggests a misapprehension of, its federal "functions" as a deemed PHS employee, which are generally described by statute and, for each individual health center, approved by the U.S. Department of Health and Human Services. *See generally* 42 U.S.C. § 254b.

Appellate Case: 24-1726     Page: 17     Date Filed: 04/13/2026 Entry ID: 5628643

sovereign immunity; it would simply make the FTCA—with its own requirements and limitations—the "exclusive remedy" for Plaintiffs' claims. 42 U.S.C. § 233(a); *Krandle*, 2024 WL 1075359, at *10 (observing "Plaintiffs may face an uphill battle" on the merits of their confidentiality-based claims because the "law of the place" may not recognize "a breach of confidence claim" where the action resulted from "a third party's" criminal activity).

The Court should grant the petition to correct the Panel's construction of § 233(a) as meaning much less than what Congress, in plain language, expressed.

### III. The Petition Presents an Exceptionally Important Question

The petition presents an exceptionally important question. The Panel's construction of "related functions" as health care fields outside of medicine, surgery, and dentistry will generate incorrect results across a range of cases resulting from PHS employee conduct Congress meant to immunize.

If the Panel's decision is not corrected, the overarching purpose of § 233(a) immunity—to advance public health—will be frustrated. Congress used broad but clear language to shield actual and deemed PHS employees from liability arising out of their medical and related conduct, so they can confidently devote themselves to their "health and health-related functions" as Congress intended. 42 U.S.C. § 233(h)(1); H.R. Rep. No. 104-398, at 5–7 (1995) (noting legislation was enacted to resolve "uncertainty over the scope of FTCA coverage under the program").

13

Under the Panel's interpretation, health centers will be forced to do precisely what Congress sought to prevent: spend scarce resources on costly liability insurance to cover routine, required day-to-day activities.

Congress chose to immunize health centers and their personnel (including non-clinicians) from any action or proceeding resulting from their "medical, surgical, dental, and related functions," not merely from suits arising from health care activities in "medical, surgical, dental, *or similar fields*." Slip Op. 7 (defining "related functions" as "activities having similar characteristics or that are specially fitted to the preceding enumerated categories"). Health centers perform a host of functions—hiring and supervising providers, designing and implementing treatment plans, monitoring patients, safeguarding records, meeting reporting obligations— that arise directly from their role as medical providers and that courts have, across decades, recognized as "related functions" under § 233(a). *See Friedenberg*, 68 F.4th at 1128–31 (collecting and endorsing "related functions" coverage decisions spanning more than twenty years); *see also Moretti v. Letty Owings Ctr.*, No. 21-cv-1525, 2023 WL 6216279 (D. Or. Sept. 25, 2023) (concluding monitoring sleeping arrangement of mother and newborn child, to prevent co-sleeping in residential treatment facility, is a "related function"); *Kezer v. Penobscot Cmty. Health Ctr.*, No. 15-cv-00225, Dkt. No. 184, at 17 (D. Me. Mar. 21, 2019) (concluding maintaining

14

confidentiality of patient information, for administrative and operational purposes, is a "related function").

The Panel's "field of health care" reading of § 233(a) immunity casts significant doubt on whether such routine, required health center functions are immunized. Such doubt defeats the statute's purpose to free health centers from expensive insurance premiums for "the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity." 42 U.S.C. § 233(h)(1); s*ee* H.R. Rep. No. 102-823, at 3–5 (1992) (protecting health centers from debilitating liability exposure allows them to spend their resources on caring for the most vulnerable patients, rather than insurance premiums).

Rehearing is warranted to establish an administrable and textually grounded test for "related functions."

## CONCLUSION

For the foregoing reasons, ARcare respectfully requests rehearing en banc.

April 13, 2026                                        Respectfully submitted,

*s/ Matthew S. Freedus*
Matthew S. Freedus
Rosie Dawn Griffin
Powers Pyles Sutter & Verville PC
1250 Connecticut Avenue NW, 8th Floor
Washington, DC 20036
Tel: 202.466.6550
matthew.freedus@powerslaw.com
rosie.griffin@powerslaw.com

15

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appellant's petition complies with the type-volume limit of <u>Federal Rule of Appellate Procedure 32(a)(7)(B)</u>, the typeface requirements of <u>Fed. R. App. P. 32(a)(5)(A)</u> and the type-style requirements of <u>Fed. R. App. P. 32(a)(6)</u>, using Microsoft Word, Times New Roman font size 14. The petition contains 3,388 words, excluding the parts of the brief exempted by Rule 32(f).

In accordance with Eighth Circuit Local Appellate Rule 28A(h), the petition as electronically filed on April 13, 2026, has been scanned with virus detection program Microsoft Defender and no virus was detected.

<u>*s/ Matthew S. Freedus*</u>
Matthew S. Freedus

## CERTIFICATE OF SERVICE

I certify on April 13, 2026, I electronically filed the foregoing petition with the Eighth Circuit Court of Appeals via the CM/ECF electronic filing system.

<u>*s/ Matthew S. Freedus*</u>
Matthew S. Freedus

Appellate Case: 24-1726    Page: 21    Date Filed: 04/13/2026 Entry ID: 5628643